UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DASOVICH,<br><br>    Plaintiff,<br><br>    v.<br><br>CONTRA COSTA COUNTY SHERIFF DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 14-cv-00258-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

## INTRODUCTION

Plaintiff Steven Dasovich ("Plaintiff") brings this excessive force claim under 42 U.S.C. § 1983 and related state law claims against Defendants Contra Costa County Sheriff's Department (the "County")[1], Sheriff David Livingston, and Deputy Tim Allen (collectively, "Defendants") related to a traffic stop initiated by Deputy Allen. Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 10. Plaintiff has filed an Opposition (Dkt. No. 13), and Defendants filed a Reply (Dkt. No. 14). On April 9, 2014, the Court found Defendants' Motion suitable for disposition without oral argument. Dkt. No. 22. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court rules as follows.

---

[1] While Plaintiff alleges violations of 42 U.S.C. § 1983 against the Contra Costa County Sheriff's Department, Defendants note that the Contra Costa County Sheriff's Department, an agency of Contra Costa County, is not capable of being sued. Mot. at fn. 1. Instead, Defendants state that Contra Costa County is the proper defendant. *Id*. Agencies are not considered "persons" under 42 U.S.C. § 1983 and cannot be defendants in such cases. *Francis v. California*, 303 F. App'x 427, 428 (2008) ("[S]tate agencies…acting in their official capacities are not 'persons' and cannot be sued for damages under 42 U.S.C. § 1983."); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("The County is a proper defendant in a § 1983 claim, an agency of the County is not."); *Taormina v. California Dep't of Corr.*, 946 F. Supp. 829, 831 (S.D. Cal. 1996) ("[S]tates and their agencies are not persons for § 1983 purposes."). As such, Contra Costa County is the proper defendant as to Plaintiff's § 1983 claim.

**BACKGROUND**

The following background is taken from Plaintiff's Complaint. Compl., Dkt. No. 1. Sergeant Hebert of the Contra Costa County Sheriff's Department observed Plaintiff "proceed through the intersection of Olivera Road and Grant Street without stopping at a red light." Compl. ¶ 12. Because he was driving an unmarked vehicle, Hebert turned on the overhead lights when he began pursuing Plaintiff. *Id*. ¶ 13. When Plaintiff did not yield, Hebert assumed it was because Plaintiff could not see the overhead lights. *Id*. ¶ 14. However, even after he turned on the sirens, Plaintiff did not yield. *Id*.

Consequently, Lieutenant Kalinowski, in an unmarked car, and Deputy Allen, in a fully marked patrol vehicle, joined the pursuit. *Id*. ¶¶ 14-15. Upon arrival, Deputy Allen took the lead in the pursuit because he was the only one in a marked vehicle. *Id*. ¶ 15. Soon after Deputy Allen joined the pursuit, Plaintiff yielded and pulled over to the shoulder. *Id*. ¶ 16. After Plaintiff exited the car, Deputy Allen ordered him to the ground. *Id*. ¶ 17. Deputy Allen then suddenly deployed a police canine. *Id*. The canine bit Plaintiff's lower left leg for approximately 20 seconds, resulting in a severe bite wound. *Id*. ¶ 17-18. Due to medical complications arising from the wound, Plaintiff was forced to make multiple trips to the hospital for treatment and care. *Id*. ¶ 18.

On January 16, 2014, Plaintiff filed the present Complaint, alleging seven causes of action related to the incident: (1) a claim under 42 U.S.C. § 1983 against Deputy Allen for depriving Plaintiff of his rights under the Fourth and Fourteenth Amendments, (2) a claim under 42 U.S.C. § 1983 against Sheriff Livingston in his official and individual capacities and the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for their failure to develop proper policies regarding the use of police canines and for their failure to properly train Deputy Allen in the use of police canines; and state law claims of (3) assault, (4) battery, (5) intentional infliction of emotional distress, (6) negligence, and (7) violations of California Civil Code sections 52 and 52.1 against all Defendants. Dkt. No. 1.

On March 5, 2014, Defendants filed the present Motion to Dismiss. Mot., Dkt. No. 10. In their Motion, Defendants first request that the Court dismiss the case on the grounds that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's entire action. Mot. at 4-6. In the alternative,

1   Defendants seek to dismiss Plaintiff's *Monell* cause of action on the grounds that it fails to allege
2   facts to demonstrate the existence of an official policy or custom of violating constitutional rights.
3   *Id*. at 6-10.  Defendants further argue there can be no liability against Sheriff David Livingston in
4   either his official or individual capacity, nor can the County be liable for Plaintiff's state law
5   claims.  *Id*. at 10-12.

## LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

1  to give fair notice and to enable the opposing party to defend itself effectively"). The court must
2  be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."
3  *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief…[is]
4  a context-specific task that requires the reviewing court to draw on its judicial experience and
5  common sense." *Id.* at 679.

6  If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
7  request to amend the pleading was made, unless it determines that the pleading could not possibly
8  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
9  banc) (internal quotation marks and citations omitted).

## DISCUSSION

**A.   Whether *Heck v. Humphrey* Bars Plaintiff's Action**

Defendants first argue that Plaintiff's action cannot proceed due to the bar presented by *Heck v. Humphrey*, 512 U.S. 477 (1994). Mot. at 4. Defendants argue that the dog bite was part of an unbroken chain of events that began when Plaintiff evaded officers in his vehicle and ended with his arrest. *Id*. at 5. It is Defendants' contention that because Plaintiff was convicted of willful evasion of deputies, his civil action would call into question the validity of that conviction. *Id*. *Heck* therefore bars the civil action. *Id*.

In response, Plaintiff points out that the vehicle code sections under which he was convicted concern conduct that applies to individuals while driving. Opp'n at 3. Deputy Allen, however, allegedly released the police dog after Plaintiff had already stopped and was in the process of complying with Deputy Allen's orders. *Id*. Thus, Plaintiff argues, the present civil action would not question the validity of his convictions under the California Vehicle Code. *Id*.

Defendants maintain that Deputy Allen could not have known at the time that the pursuit was in fact finished. Reply at 2. As such, the release of the police canine is a continuation of the evasion of the officers and is part of the factual basis underlying Plaintiff's conviction. *Id*.

Under *Heck*, civil tort actions cannot be used to "challeng[e] the validity of outstanding criminal judgments . . . that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck*, 512 U.S. at 486. This is to prevent parallel litigation and

4

"attack[s] on the conviction through the vehicle of a civil suit." *Id*. at 485. Thus, a § 1983 plaintiff must prove that his conviction has been reversed or otherwise expunged if the actions underlying the claim, if unlawful, would invalidate that conviction. *Id*. at 486-87.

Plaintiff was convicted of (1) evasion of peace officers without wanton disregard for safety or persons or property and (2) driving under the influence of drugs or alcohol. Req. for Jud. Notice, Ex. B. Neither conviction need be overturned, however, even if the Court found Deputy Allen's actions violated Plaintiff's constitutional rights. Whether excessive force was used after Plaintiff stopped and got out of the car is irrelevant because at the point of arrest, all the elements necessary for conviction for violation of Vehicle Code sections 2800.2 and 23152(a) were present. As the two violations were complete at the moment the police canine was released, the dog bite is not part of Plaintiff's convictions.

In support of their argument, Defendants rely upon *Truong v. Orange Cnty. Sheriff's Dep't*, 129 Cal. App. 4th 1423 (2005). Mot. at 5-6. In that case, the plaintiff resisted an order to disrobe and shower while being booked into the county jail. *Id.* at 1425. Although she started to comply, "four or more deputies pounced upon her and began twisting her arms and striking her about her body," resulting in a fractured arm and numerous soft tissue injuries. *Id*. at 1426. Due to this incident, Truong pled guilty to one count of resisting the exercise of lawful duty in violation of Penal Code § 148(a). *Id*. In the plea agreement, she admitted to "willfully and unlawfully resist[ing] and obstruct[ing] a peace officer's lawful order." *Id*.

Truong subsequently filed a lawsuit arising out of the incident at the jail, alleging violations of her civil rights pursuant to § 1983. *Id*. The defendants argued the § 1983 action should be dismissed, as it would call into question the validity of Truong's conviction under Penal Code section 148. *Id*. The California Court of Appeal agreed. *Id*. at 1429-30. Although Truong argued the alleged assault occurred after she stopped resisting and was therefore distinct from the conviction, the court noted the difficulty for an officer to distinguish when an individual decides to stop resisting and begins to obey orders. *Id*. at 1429 ("Asserting that the crime was somehow over because the plaintiff changed her mind and started to remove her sweater is temporal hair-splitting, and would place deputies in untenable situations, where they are required to guess the

5

1   mindset of the arrestee."). The court held that "Truong's refusal to obey the lawful order and the
2   events that led to her injuries [were] part of unbreakable chain of events. Therefore, the limit set
3   forth in *Heck* applie[d] . . . and Truong's civil rights claim [could not] be maintained." *Id*.

4   In this case, there is no question as to when Plaintiff's violations were complete. As
5   California Vehicle Code sections 2800.2[2] and 23152(a)[3] involve conduct while driving a car, a
6   violation of either section is complete once a person pulls over and exits the car. Plaintiff had
7   exited his car, thus completing the two violations, when the police canine bit him. Unlike in
8   *Truong*, where the alleged excessive force was indistinguishable from the act leading to the
9   plaintiff's conviction, the dog bite here is clearly distinct from the acts that form the basis for
10  Plaintiff's convictions. *Smith v. City of Hemet*, 394 F.3d 689, 698 (9th Cir. 2005) ("Under *Heck*,
11  [plaintiff] would be allowed to bring a § 1983 action, however, if the use of excessive force
12  occurred *subsequent to* the conduct on which his conviction was based.") (emphasis in original).
13  Thus, "the relevant question is whether success in a subsequent § 1983 suit would 'necessarily
14  imply' or 'demonstrate' the invalidity of the earlier conviction or sentence." *Id.* at 695 (quoting
15  *Heck*, 512 U.S. at 487); *Sarpy v. Pulido*, 2013 WL 2898068, at *4 (C.D. Cal. June 11, 2013)
16  ("Given that plaintiff does not challenge the validity of his arrest and conviction, . . . plaintiff's
17  claim is not *Heck*-barred."). As Plaintiff's alleged injuries from the police canine do not call into
18  question his convictions under the California Vehicle Code, *Heck* is inapplicable.

19  Accordingly, because *Heck* does not bar Plaintiff's civil rights action from proceeding, the
20  Court DENIES Defendants' Motion on this ground.

21  **B.   Whether Plaintiff's *Monell* Claim Fails to Allege Sufficient Facts**

22  In his Complaint, Plaintiff alleges that Sheriff Livingston and the County "developed and

---

[2] Under California Vehicle Code § 2800.2(a), "[i]f a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine."
[3] Under California Vehicle Code § 23152(a), "[i]t is unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle."

1    maintained policies or customs exhibiting deliberate indifference to the constitutional rights of
2    individuals," which "led to the improper use of canines by individual officers." Compl. ¶ 27.
3    Plaintiff also alleges that Sheriff Livingston and the County failed to properly train Deputy Allen
4    in the use of police canines. *Id.* ¶ 28,

5    In their Motion, Defendants argue that Plaintiff's Complaint lacks any factual allegations
6    to show that the County had an official policy of using excessive force or that the County and
7    Sheriff Livingston failed to properly train Deputy Allen. Mot. at 9-10. Additionally, Defendants
8    argue that Plaintiff's single example of an alleged incident of excessive force is insufficient to
9    impose *Monell* liability. *Id.* at 8.

10   In response, Plaintiff argues that "bad policies or customs and improper training caused his
11   injury," and that "[s]uch allegations provide a valid basis for a *Monell* claim." Opp'n at 5.
12   Further, although Plaintiff maintains that even one incident would be enough to establish
13   municipal liability, he argues that the "language [in the Complaint] is not limited to one event, and
14   implies a pattern of multiple incidents of officers deploying canines in violation of the law." *Id.*
15   Pursuant to *Monell*, municipalities "can be sued directly under § 1983 for monetary, declaratory,
16   or injunctive relief where … the action that is alleged to be unconstitutional implements or
17   executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated
18   by that body's officers." 436 U.S. at 690. A plaintiff may establish municipal liability under §
19   1983 by demonstrating that (1) "a city employee committed the alleged constitutional violation
20   pursuant to a formal governmental policy or a longstanding practice or custom which constitutes
21   the standard operating procedure of the local governmental entity;" (2) "the individual who
22   committed the constitutional [violation] was an official with final policy-making authority and that
23   the challenged action itself thus constituted an act of official governmental policy;" or (3) "an
24   official with final policy-making authority ratified a subordinate's unconstitutional decision or
25   action and the basis for it." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Gillette v.*
26   *Delmore*, 797 F.2d 1342, 1346-47 (9th Cir. 1992)).

27   Here, Plaintiff's *Monell* allegations consist of a formulaic recitation of the elements of a
28   cause of action. While a municipality may be held liable for a failure to train that reaches

constitutional proportions, in order to defeat a motion to dismiss for failure to state a claim, the complaint must contain specific factual allegations tending to support the inference that the municipality failed to train its employees. *See Young v. City of Visalia,* 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (holding that under *Iqbal,* where a "complaint does not identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused [p]laintiffs' harm[,]" such "threadbare" conclusory allegations will not support the claim); *see also Canas v. City of Sunnyvale,* 2011 WL 1743910, at *6 (N.D. Cal. Jan. 19, 2011) ("Other than alleging that the officers' EMT training was inadequate to enable them to assist the Decedent after he was shot, Plaintiffs do not explain in detail *how* the City's alleged policies or customs are deficient, nor do they explain *how* the alleged policies or customs caused harm to Plaintiffs and the Decedent. At most, the allegations permit the Court to infer a 'mere possibility of misconduct' on behalf of the City. *Iqbal,* 129 S.Ct. at 1950. Fed. R. Civ. P. 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"). Although Plaintiff alleges the County failed to properly train Deputy Allen in the use of police canines and to refrain from violating individuals' Fourth Amendment rights, he does not identify what those training practices were or how they were deficient.

Additionally, Plaintiff is incorrect in his assertion that a single incident can establish a municipal policy or custom. "The custom must be so persistent and widespread that it constitutes a permanent and well settled city policy… Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918 (internal quotations omitted). Plaintiff's one incident of an alleged constitutional deprivation therefore cannot support a *Monell* claim.

Accordingly, because Plaintiff's conclusory allegations do not provide the necessary factual content that would permit more than an inference of the possibility of misconduct, the Court GRANTS Defendants' Motion on this ground WITH LEAVE TO AMEND.

**C.     Whether Sheriff Livingston is Liable in His Official Capacity**

Plaintiff alleges Sheriff Livingston "developed and maintained policies or customs

exhibiting deliberate indifference to the constitutional rights of individuals…, which caused the violation of Plaintiff's rights … [and] led to the improper use of canines by individual officers, including the release of canines to bite on individuals when it is not objectively reasonable to do so." Compl. ¶ 27.  Plaintiff also alleges Sheriff Livingston "failed to properly train Defendant Tim Allen in the use of police canines, including properly training Defendant Tim Allen to refrain from violating the Fourth Amendment rights of residents." *Id*. ¶ 28.

In their Motion, Defendants argue that Plaintiff cannot name both Sheriff Livingston in his official capacity and the County as defendants for violations of § 1983.  Mot. at 10.  Defendants rely on *Luke v. Abbott*, 954 F. Supp. 993, 966 (C.D. Cal. 1997) (holding "when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed").  *Id*.

In response, Plaintiff argues that this case is distinguishable from *Luke*, because it applies when the officer is named in official capacity only.  Opp'n at 7.  Plaintiff argues that *Luke* is inapplicable because Sheriff Livingston is named in both official and individual capacities.  *Id*.

Pursuant to *Monell*, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." 436 U.S. at 690 n.55.  This is because "[i]n an official capacity suit, the government entity is the real party in interest and the plaintiff must show that the entity's policy or custom played a part in the federal law violation." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded.").

As Plaintiff names the County as a defendant, it is unnecessary to also name Sheriff Livingston in his official capacity.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Sheriff Livingston in his official capacity WITHOUT LEAVE TO AMEND.

**D.     Whether Sheriff Livingston is Liable in His Individual Capacity**

Plaintiff brings the same claims against Sheriff Livingston in his individual capacity. Compl. ¶¶ 27-28.  Defendants argue that Plaintiff's claims against Sheriff Livingston in his individual capacity must also be dismissed because Plaintiff fails to allege facts showing Sheriff Livingston knew of or participated in the pursuit and arrest of Plaintiff.  Mot. at 11.  In response, Plaintiff asserts that the allegation that Sheriff Livingston maintained a policy that caused the constitutional injury is sufficient to hold him individually liable.  Opp'n at 7.

Individual liability under § 1983 differs from official liability in that "in a personal-capacity suit, the plaintiff is trying to place liability directly on the state officer for actions taken under state law."  *Vance*, 928 F. Supp. at 996 (citing *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991)).  Courts "have found supervisorial liability under § 1983 where the supervisor 'was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'"  *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)).

Supervisors can be "individually liable in § 1983 suits when culpable action, or inaction, is directly attributable to them.  [Courts] have never required a plaintiff to allege that a supervisor was physically present when the injury occurred."  *Starr* , 652 F.3d at 1205.  Indeed, the supervisor does not need to be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."  *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).  Liability may also be imposed if "a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation."  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013) (internal quotation omitted).

Contrary to Defendants' contention, Sheriff Livingston is not required to have personally participated in or have been present for the pursuit of Plaintiff or the dog bite in order for him to be held individually liable.  His involvement in the policies or training which led to the constitutional conduct is sufficient to impose liability.  *See Starr*, 652 F.3d at 1205-06 ("[T]he supervisor's participation could include his own culpable action or inaction in the training,

supervision, or control of his subordinates." (internal quotation omitted)).

However, Plaintiff's Complaint fails to state sufficient facts to demonstrate a connection between Sheriff Livingston's involvement in police canine policies and training and Plaintiff's injury. *See Canas*, 2011 WL 1743910, at *6 ("Other than alleging that the officers' EMT training was inadequate [to] enable them to assist the Decedent after he was shot, Plaintiffs do not explain in detail *how* the City's alleged policies or customs are deficient, nor do they explain *how* the alleged policies or customs caused harm to Plaintiffs and the Decedent. At most, the allegations permit the Court to infer a 'mere possibility of misconduct' on behalf of the City... Fed.R.Civ.P. 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" (emphasis in the original)).

Accordingly, because Plaintiff's conclusory allegations do not provide the necessary factual content that would permit more than an inference of the possibility of misconduct, the Court GRANTS Defendants' Motion on this ground WITH LEAVE TO AMEND.

**E.     Whether the County is Liable for Claims Based on State Law**

As to Plaintiff's state law claims of assault, battery, intentional infliction of emotional distress, negligence, and violations of California Civil Code sections 52 and 52.1, Defendants contend that the County cannot be held liable for these claims because Plaintiff did not cite to a statute that provides for direct tort liability of a public entity. Mot. at 12. In response, Plaintiff refers to California Government Code section 815.2, which states,"[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Opp'n at 16.

In California, "[d]irect liability of a public entity … must be founded on a specific statute either declaring the entity to be liable or creating a specific duty of care apart from the general tort principles embodied in Civil Code section 1714." *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 251 (2007). Section 815.2 provides that, "[u]nder California law, the Counties, as public entities, are liable for the actions of their employees." *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 393 (9th Cir. 2014) (citing Cal. Gov't Code § 815.2(a)). Whereas *Monell* imposes liability on

counties only if the county adopted illegal or unconstitutional policies or customs, section 815.2 "imposes liability on counties under the doctrine of respondeat superior for acts of county employees." *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013) (quoting *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002)).

Here, because Plaintiff did not cite a statute that provides for direct tort liability of the County, the Court GRANTS Defendants' Motion on this ground. However, since California Government Code section 815.2 extends liability to the County, Plaintiff is granted LEAVE TO AMEND to include the statutory authority in his complaint.

## CONCLUSION

Based on the analysis above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (Dkt. No. 10) as follows:

(1) The Court DENIES Defendants' Motion with respect to their argument based on *Heck v. Humphrey*.

(2) The Court GRANTS Defendants' Motion with respect to Plaintiff's *Monell* claim against the County. Because Plaintiff may cure this pleading deficiency by alleging additional facts, the Court GRANTS Plaintiff LEAVE TO AMEND, consistent with this Order.

(3) The Court GRANTS Defendants' Motion with respect to Plaintiff's § 1983 claim against Sheriff Livingston in his official capacity WITHOUT LEAVE TO AMEND.

(4) The Court GRANTS Defendants' Motion with respect to Plaintiff's § 1983 claim against Sheriff Livingston in his individual capacity. Because Plaintiff may cure this pleading deficiency by alleging additional facts, the Court GRANTS Plaintiff LEAVE TO AMEND, consistent with this Order.

(5) The Court GRANTS Defendants' Motion with respect to Plaintiff's state law claims against the County. Because Plaintiff may cure this pleading deficiency by alleging the appropriate statutory authority, the Court GRANTS Plaintiff LEAVE TO AMEND, consistent with this Order.

Plaintiff shall file his amended complaint by July 29, 2014.

**IT IS SO ORDERED.**

Dated: July 8, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge