UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN DASOVICH,

    Plaintiff,

v.

CONTRA COSTA COUNTY SHERIFF DEPARTMENT, et al.,

    Defendants.

Case No. 14-cv-00258-MEJ

**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 26

## INTRODUCTION

Plaintiff Steven Dasovich ("Plaintiff") brings this excessive force claim under 42 U.S.C. § 1983 and related state law claims against Defendants Contra Costa County (the "County"), Sheriff David Livingston, and Deputy Tim Allen (collectively, "Defendants") related to a traffic stop initiated by Deputy Allen. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Cause of Action in his First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 26. Plaintiff has filed an Opposition (Dkt. No. 28), and Defendants filed a Reply (Dkt. No. 29). The Court finds this matter suitable for disposition without oral argument and VACATES the October 2, 2014 hearing. Civ. L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court rules as follows.

## BACKGROUND

**A.    Factual Background**

The following factual background is taken from Plaintiff's First Amended Complaint. Dkt. No. 24. On December 18, 2012, Sergeant Hebert of the Contra Costa County Sheriff's

1  Department observed Plaintiff's vehicle "proceed through the intersection of Olivera Road and
2  Grant Street without stopping at a red light." FAC ¶ 12.  Because he was driving an unmarked
3  vehicle, Hebert turned on the overhead lights when he began pursuing Plaintiff. *Id*. ¶ 13.  When
4  Plaintiff did not yield, Hebert assumed it was because Plaintiff could not see the overhead lights.
5  *Id*. ¶¶ 13, 14.  However, even after he turned on the sirens, Plaintiff did not yield. *Id*. ¶ 14.

6        Consequently, Lieutenant Kalinowski, in an unmarked car, and Deputy Allen, in a fully
7  marked patrol vehicle, joined the pursuit. *Id*. ¶¶ 14-15.  Upon arrival, Deputy Allen took the lead
8  in the pursuit because he was the only one in a marked vehicle. *Id*. ¶ 15.  Soon after Deputy Allen
9  joined the pursuit, Plaintiff yielded and pulled over to the shoulder. *Id*. ¶ 16.  After Plaintiff exited
10 the car, Deputy Allen ordered him to the ground. *Id*. ¶ 17.  As Plaintiff moved to the ground,
11 Deputy Allen deployed police canine Rico. *Id.*  Rico bit Plaintiff's lower left leg for
12 approximately 20 seconds, resulting in a severe bite wound. *Id*. ¶¶ 17-18.  Due to medical
13 complications arising from the wound, Plaintiff was forced to make multiple trips to the hospital
14 for treatment and care. *Id*. ¶ 18.

15 **B.     Procedural Background**

16       On January 16, 2014, Plaintiff filed his initial Complaint, alleging seven causes of action
17 related to the incident:  (1) a claim under 42 U.S.C. § 1983 against Deputy Allen for depriving
18 Plaintiff of his rights under the Fourth and Fourteenth Amendments, (2) a claim under 42 U.S.C. §
19 1983 against Sheriff Livingston in his official and individual capacities and the County pursuant to
20 *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for their failure to develop proper policies
21 regarding the use of police canines and for their failure to properly train Deputy Allen in the use of
22 police canines; and state law claims of (3) assault, (4) battery, (5) intentional infliction of
23 emotional distress, (6) negligence, and (7) violations of California Civil Code sections 52 and 52.1
24 against all Defendants.  Dkt. No. 1.

25       On March 5, 2014, Defendants filed a Motion to Dismiss. Dkt. No. 10.  On July 8, 2014,
26 the Court granted in part and denied in part Defendants' motion, with leave to amend certain
27 causes of action. *Order Re Motion to Dismiss*, Dkt. No. 23.  Relevant to Defendants' present
28 motion, the Court found that Plaintiff's *Monell* allegations consisted of a formulaic recitation of

the elements of a cause of action and lacked specific factual allegations tending to support the inference that the municipality failed to train its employees. *Id.* at 7-8. Although Plaintiff alleged the County failed to properly train Deputy Allen in the use of police canines and to refrain from violating individuals' Fourth Amendment rights, he did not identify what those training practices were or how they were deficient. *Id.* at 8. The Court also informed Plaintiff that a single incident could not establish a municipal policy or custom; instead, "'The custom must be so persistent and widespread that it constitutes a permanent and well settled city policy…. Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.'" *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Plaintiff filed his FAC on July 28, 2014, alleging seven causes of action: (1) an excessive force claim under 42 U.S.C. § 1983 against Deputy Allen for depriving Plaintiff of his rights under the Fourth and Fourteenth Amendments, (2) a claim under 42 U.S.C. § 1983 against Sheriff Livingston in his official capacity and the County pursuant to *Monell*, for their failure to develop proper policies regarding the use of police canines and for their failure to properly train Deputy Allen in the use of police canines; and state law claims of (3) assault, (4) battery, (5) intentional infliction of emotional distress, (6) negligence, and (7) violations of California Civil Code sections 52 and 52.1 against all Defendants.

Defendants now move the Court under Rule 12(b)(6) for an order dismissing the Second Cause of Action for failure to allege sufficient facts to state a claim for relief. Dkt. No. 26. As to Plaintiff's *Monell* claim, Defendants argue that he still fails to allege sufficient facts to state a cause of action. *Id.* at 3. As to Plaintiff's claim against Sheriff Livingston in his individual capacity, Defendants argue that the allegations lack factual detail and do not allege what Sheriff Livingston did to develop or maintain policies, what the policies were, or what role the Sheriff had in training Deputy Allen. *Id.* at 6.

**LEGAL STANDARD**

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a

complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief…[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

4

banc) (internal quotation marks and citations omitted).

## DISCUSSION

### A.   Plaintiff's *Monell* Claim

In his FAC, Plaintiff alleges that Sheriff Livingston and the County "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of individuals in Contra Costa County, which caused the violations of Plaintiff's rights." FAC ¶ 27. Plaintiff alleges that the policies or customs maintained by the County "led to the improper use of canines by individual officers, including the release of canines to bite on individuals when it is not objectively reasonable to do so." *Id.* Plaintiff alleges that Defendants failed to train Deputy Allen to: (1) "refrain from releasing a police canine on an individual who did not present a threat of injury to himself or others;" (2) "refrain from releasing a police canine on an individual who is unarmed, complying with police orders and submitting to arrest without restraint;" and (3) refrain from releasing a police canine on an individual who is not physically resisting arrest;" and (4) limit the amount of force he uses. *Id.* ¶ 28. He further alleges that these failures resulted in Deputy Allen violating his "Fourth Amendment right to be free from excessive force at a time when [he] was unarmed, not a threat of injury to officers or others, not fleeing, not physically resisting arrest and peacefully submitting to the commands of [Deputy Allen]." *Id.* ¶ 29. As to Sheriff Livingston, Plaintiff alleges that he ratified Deputy Allen's conduct. *Id.* ¶ 30.

In their Motion, Defendants argue that, although Plaintiff alleges the failure to properly train Deputy Allen, he fails to allege facts that there was a policy or custom of inadequate training for other deputies, or that inadequate training led to a pattern of constitutional violations. Mot. at 5. Defendants contend that Plaintiff's allegations state only that Deputy Allen was improperly trained and that he violated plaintiff's rights, but these allegations are insufficient to support a *Monell* claim against the County. Defendants further argue that "merely alleging that the Sheriff knew of Allen's actions and approved of them is insufficient. To properly allege ratification sufficient to impose liability on the County, plaintiff must allege that Allen's actions on December 18, 2012, were subject to review by Sheriff Livingston and that he considered Allen's actions in connection with the County's policies." *Id.* Defendants maintain that Sheriff Livingston must

have made a conscious choice to approve the action, not merely fail to discipline Deputy Allen. *Id.*

In response, Plaintiff argues that "[t]he consequences of releasing a police canine and the injuries that result from their attacks are readily apparent. The need to train a police canine handler in the specific manner in which they failed to train Defendant ALLEN was so obvious that a failure to do so 'reflect[ed] deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" Opp'n at 4-5 (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997)). He maintains that this policy of inaction "'is the functional equivalent of a decision by the city itself to violate the constitution.'" *Id.* at 5 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1988)). Plaintiff further argues that Sheriff Lvingston "was aware of the constitutional violation and declared his approval of it." *Id.*

1. <u>Legal Standard</u>

A local government may only be liable under § 1983 for its own action or inaction, not that of its employees. *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). As such, a successful *Monell* claim must prove that a government entity's policy, practice, or custom is the "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Liability based on a municipal policy may be satisfied one of three ways: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of "deliberate indifference" to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing Supreme Court authorities).

In the past, the Ninth Circuit required plaintiffs in civil rights actions against local governments to plead no more than a "bare allegation" that the government officials' conduct conformed to some government policy or custom. *See, e.g., Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986). Today, however, such a claim must adhere to two principles. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Starr*, 652 F.3d at

1216).

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr*, 652 F.3d at 1216.

    2.    <u>Application to the Case at Bar</u>

          *a.*    *Deliberate Indifference*

In this case, Plaintiff alleges that the County acted with "deliberate indifference" as to his constitutional rights. FAC ¶ 27. The Supreme Court has held that inadequate training may constitute a "policy" under *Monell* that gives rise to municipal liability." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1988); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186. A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately

indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682.  A "pattern of tortious conduct," despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip law enforcement officers with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997); *Long*, 442 F.3d at 1186-87.  However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton*, 489 U.S. at 391; *see also Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *McDade*, 223 F.3d at 1135, 1141 (9th Cir. 2000).

Here, Plaintiff alleges that Defendants developed and maintained training policies that "led to the improper use of canines by individual officers, including the release of canines to bite on individuals when it is not objectively reasonable to do so."  FAC ¶ 27.  Although he makes this allegation generally, he focuses solely on Deputy Allen's training:

> [Defendants] failed to: train Defendant TIM ALLEN to refrain from releasing a police canine on an individual who did not present a threat of injury to himself or others; train Defendant TIM ALLEN to refrain from releasing a police canine on an individual who is unarmed, complying with police orders and submitting to arrest without restraint; train Defendant TIM ALLEN to refrain from releasing a police canine on an individual who is not physically resisting arrest; and train Defendant TIM ALLEN to limit the amount of force he uses.

*Id.* ¶ 28

In their Motion, Defendants maintain that Plaintiff fails to allege facts that there was a policy or custom of inadequate training for deputies other than Deputy Allen, or that inadequate training led to a pattern of constitutional violations.  Mot. at 5.  As the Court held in its previous Order, a single incident cannot establish a municipal policy or custom.  *Order Re Motion to Dismiss* at 8 (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("The custom must be so persistent and widespread that it constitutes a permanent and well settled city policy… Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (internal quotations omitted); *see also Davis v. City of*

1  *Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a
2  municipal policy or custom based solely on the occurrence of a single incident of unconstitutional
3  action by a non-policymaking employee."); *Bd. Of Cnty. Comm'rs*, 520 U.S. at 407-09 ("A pattern
4  of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate
5  deliberate indifference for purposes of failure to train.").

6  In response to the Court's previous Order, Plaintiff amended his complaint to include
7  allegations specific to Defendants' training policies related to the use and release of canines. FAC
8  ¶¶ 27-28. Although Plaintiff focuses on Deputy Allen, the language of Plaintiff's FAC can be
9  interpreted to apply to all individuals that are trained using said policies. Plaintiff does not allege
10 that these policies applied only to Deputy Allen; instead, he maintains that these policies "led to
11 the improper use of canines by individual *officers*." *Id.* (emphasis added). Thus, under the liberal
12 pleading standard of Rule 8(a)(2) and drawing the reasonable inference that Defendants are liable
13 for the misconduct alleged, the Court finds that the FAC contains sufficient allegations of
14 underlying facts to give fair notice to Defendants and to enable them to defend against the
15 allegations effectively. Accordingly, the Court DENIES Defendants' Motion on this ground.

16       *b.*    *Ratification*

17 Plaintiff also alleges that Sheriff Livingston ratified Deputy Allen's conduct. *Id.* ¶ 30.
18 Specifically, he alleges that Sheriff Livingston ratified the conduct "when he was aware of the
19 conduct of Defendant TIM ALLEN on December 18, 2012 [the date of the incident], and declared
20 his approval of the conduct." *Id.* Defendants argue that Plaintiff's allegations are implausible as
21 "[t]here are no allegations that explain how the Sheriff would be informed of an arrest and approve
22 a deputy's actions on the date of the arrest itself," and "[t]here are no allegations that Deputy
23 Allen's actions were reviewed by anyone at anytime for any reason, let alone that this arrest came
24 to the attention of the Sheriff who then expressly approved it." Reply at 3.

25 "A municipality ... can be liable for an isolated constitutional violation if the final
26 policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.
27 1999). To show ratification, a plaintiff must show that the "authorized policymakers approve a
28 subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)

(internal citations omitted). The policymaker must have knowledge of the constitutional violation and actually approve of it. *Id.* A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. *Id.*; *see also Koenig v. City of Bainbridge Island*, 2011 WL 3759779, at *8 (W.D. Wash. Aug. 25, 2011) (stating that "in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures."); *Garcia v. City of Imperial*, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010).

Here, Plaintiff merely alleges that Sheriff Livingston ratified Deputy Allen's conduct "when he was aware of the conduct" on the day it happened and "declared his approval of the conduct." FAC ¶ 30. There are no allegations that explain how the Sheriff would be informed of an arrest and approve a deputy's actions on the date of the arrest itself, nor are there allegations that Deputy Allen's actions were reviewed by anyone at anytime for any reason, let alone that this arrest came to the attention of the Sheriff who then expressly approved it.

In his Opposition, Plaintiff cites two Ninth Circuit case in support of his allegation that Sheriff Livingston ratified Deputy Allen's conduct. In *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), the chief of police signed a letter informing the plaintiff "that none of his many complaints [against individual officers] would be sustained, thereby ratifying the investigation into [the] complaints." The case had proceeded to trial, where the jury found evidence of a departmental policy or custom of resorting to the use of excessive force, and evidence that the chief failed to take any remedial steps after the violations. *Id.* at 647. In *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995), the chief of police ordered an internal investigation into the plaintiff's sexual harassment charge. Subsequently, he was "kept up-to-date in the general sense" of the progress of the investigation, and at its close, the chief approved "both the propriety of the investigation and the report's conclusion." *Id.* (internal quotations omitted). These cases are distinguishable because they involved affirmative action by police chiefs, and not merely a lack of disciplinary action or refusal to overrule a subordinate's action. *See e.g., Clouthier*, 591 F.3d at 1250; *Christie*, 176 F.3d at 1239-40. Here, Plaintiff's FAC contains no such allegations of affirmative action by Sheriff Livingston; instead, he alleges only that the

Sheriff ratified Deputy Allen's conduct "when he was aware of" it. FAC ¶ 30. Such threadbare facts do not contain sufficient allegations of underlying facts to give fair notice and to enable Defendants to defend themselves effectively. *Starr*, 652 F.3d at 1216.

In sum, Plaintiff's FAC does not properly allege ratification by Sheriff Livingston. Accordingly, this claim must be dismissed. However, as Plaintiff could possibly cure these defects with the allegation of other facts, the Court GRANTS Defendants' Motion as to Plaintiff's ratification claim WITH LEAVE TO AMEND. Plaintiff should be mindful that if he decides to amend this claim, he must include factual allegations relating to Sheriff Livingston's knowledge of the specific constitutional violation at issue and a "conscious, affirmative choice" to ratify the conduct at issue. Failure to include such allegations (and not merely a formulaic recitation of the elements of the cause of action) will likely result in dismissal of the claim with prejudice.

**B.      Whether Sheriff Livingston is Liable in His Individual Capacity**

The allegations against Sheriff Livingston are identical to those against the County: developing and maintaining policies exhibiting deliberate indifference and failure to train Deputy Allen properly in the use of canines. FAC ¶¶ 27-29. He also alleges that Sheriff Livingston has individual liability because he is the final policymaker of the County, and he ratified Deputy Allen's conduct because he was aware of it and declared his approval. *Id.* ¶ 30. Defendants argue that these allegations lack factual detail and do not allege what Sheriff Livingston did to develop or maintain policies, what the policies were, or what role the Sheriff had in training Deputy Allen. Mot. at 6. Defendants further argue that there must be a causal connection between Sheriff Livingston's conduct and the constitutional deprivation, but Plaintiff has not alleged such a causal connection. *Id.* at 7. Plaintiff does not specifically address Defendants' argument in his Opposition.

1.      Legal Standard

Individual liability under § 1983 differs from official liability in that "in a personal-capacity suit, the plaintiff is trying to place liability directly on the state officer for actions taken under state law." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (citing *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991)). Courts "have found supervisorial liability under §

1983 where the supervisor 'was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)); *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013) (internal quotation omitted). Thus, a supervisor "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The Ninth Circuit has explained various ways in which a supervisory figure can be individually liable in a § 1983 case. A supervisor can be liable if he or she directed his or her subordinates to commit the offensive act. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009). Liability also can attach when the supervisor "set[s] in motion a series of acts by others ..., which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (modifications in original) (internal quotation marks omitted). Even when the supervisor does not direct his or her subordinates to commit the offensive act, or set in motion a series of acts by others which caused others to inflict the constitutional injury, the supervisor can still be liable if he or she "knew of the violations" being committed by subordinates yet "failed to act to prevent them." *Hydrick v. Hunter*, 500 F.3d 978, 988 (2007).[1] The Ninth Circuit also recognizes that "[s]upervisory liability [can be] imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005). Finally, a supervisory official can be liable if he or she "implement[s] a

---

[1] A "supervisor's mere knowledge of his subordinate's discriminatory purpose" does not, however, "amount[ ] to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 677. "In a § 1983 suit … the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

2. <u>Application to the Case at Bar</u>

Here, as discussed above, Plaintiff alleges that Defendants, including Sheriff Livingston, developed and maintained training policies that "led to the improper use of canines by individual officers, including the release of canines to bite on individuals when it is not objectively reasonable to do so." FAC ¶¶ 27-28. If Plaintiff is able to establish that Sheriff Livingston failed to train, supervise, or control his subordinates in the deployment of canines, he can be held liable under § 1983. *Menotti*, 409 F.3d at 1149. He can also be held liable if this policy is "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen*, 885 F.2d at 646.

Accordingly, under the liberal pleading standard of Rule 8(a)(2) and drawing all reasonable inferences that Sheriff Livingston is liable for the misconduct alleged, the Court finds that the FAC contains sufficient allegations of underlying facts to give fair notice to Sheriff Livingston and to enable him to defend against the allegations effectively. Accordingly, the Court DENIES Defendants' Motion on this ground.

## CONCLUSION

Based on the analysis above, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion as follows:

1) Defendants' Motion is DENIED as to Plaintiff's deliberate indifference *Monell* claim under § 1983;

2) Defendants' Motion is GRANTED WITH LEAVE TO AMEND as to Plaintiff's ratification claim under § 1983; and

3) Defendants' Motion is DENIED as to Plaintiff's claim against Sheriff Livingston in his individual capacity.

Plaintiff should be mindful that if he decides to amend his *Monell* claim based on Sheriff Livingston's ratification of Deputy Allen's conduct, he must include factual allegations relating to Sheriff Livingston's knowledge of the specific constitutional violation at issue and a "conscious,

affirmative choice" to ratify the conduct at issue.  Failure to include such allegations (and not merely a formulaic recitation of the elements of the cause of action) will likely result in dismissal of the claim with prejudice.  If Plaintiff chooses to file an amended complaint, he must do so by October 1, 2014.

**IT IS SO ORDERED.**

Dated: September 17, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge